IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GLORIA M. MAYFIELD and KARA MITCHELL, | ) ) ) |
| Plaintiffs, | ) ) ) No. 17 CV 1692 |
| v. | ) ) Magistrate Judge Michael T. Mason ) ) |
| VICTORIA LIPNIC, Acting Chair, United States Equal Employment Opportunity Commission, d/b/a EEOC, | ) ) ) ) |
| Defendant. | ) |

# MEMORANDUM OPINION ORDER

For the reasons set forth below, the motion for summary judgment filed by defendant Victoria Lipnic, Acting Chair, United States Equal Employment Opportunity Commission, d/b/a EEOC ("defendant") [34] as to plaintiff Gloria Mayfield ("Mayfield") is granted.

# FACTUAL BACKGROUND[1]

## Procedural History

---

[1] The following facts are compiled from Defendant's Rule 56.1(a)(3) Statement of Facts and from Mayfield's response. A court in the Northern District of Illinois is "entitled to limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' statements." *Bordelon v. Chicago Sch. Reform Bd. of Trustees,* 233 F.3d 524, 529 (7th Cir. 2000) (citations omitted). Under Local Rule 56.1, in the event of noncompliance, the movant's assertions of fact are deemed admitted, regardless of contrary evidence in the record. *Id.* It should be noted that many of the facts advanced by Mayfield were not accepted due to the failure to comply with Local Rule 56.1 in the following ways: (1) not including a concise response to movant's statements in accordance with Local Rule 56.1(b)(3); and (2) providing new factual assertions in her response without filing a Statement of Additional Facts in violation of Local Rule 56.1(b)(3)(B). *See Albiero v. City of Kankakee,* 246 F.3d 927, 933 (7th Cir. 2001); *Cichon v. Exelon Generation Co.*, No. 02-CV-3441, 2003 WL 22169761, at *1 (N.D. Ill. Sept. 18, 2003).

Mayfield began working with the Equal Employment Opportunity Commission ("EEOC") as a clerk typist in 1976. She was eventually promoted to an investigator (a GS-12 on the GS scale).

On May 22, 2014, Mayfield first contacted the EEOC's office of Equal Employment to initiate counseling. On September 18, 2014, she filed a formal complaint alleging that she had been subjected to harassment and disparate treatment on the basis of race (Black), sex (female), age (58), disability, and reprisal based on a number of EEOC actions. Her complaint was amended several times before December 2015.

Mayfield voluntarily retired in March 2017 as a GS-12 investigator. She did not raise her claim that she was forced to retire with an EEOC counselor within 45 days of the alleged action, nor did she raise the claim in a formal EEOC complaint. She filed this present employment discrimination action alleging race and gender discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16, age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, and disability discrimination under the Rehabilitation Act, 29 U.S.C. § 701 *et seq*.

**Failure to Accommodate**

In May 2010, Mayfield requested accommodations for her disability due to depression, hypertension, and a hernia. Her requested accommodations included a job limitation of lifting, pushing, or carrying no more than ten pounds, a flexible work schedule to allow for doctor visits, and that her hours be reduced when her blood pressure was too high.

On May 11, 2010, Mayfield was advised by the EEOC disability program manager that she would be accommodated with a "slide-and-glide" schedule, meaning she had a 9:00 a.m. to 11:00 a.m. reporting time and 6:30 p.m. to 8:30 p.m. departure time, which could be varied daily. In Mayfield's case, she worked a 5/4/9 schedule, consisting of working nine hours each day, five days the first week of the pay period and four days the second week. According to the EEOC, the 5/4/9 schedule was not ordinarily permitted with the "slide-and-glide" schedule. Mayfield communicated both her arrival and departure times to her supervisor as soon as practicable each day so that she could make up missed time. She was also to report for duty at fixed hours on the days she was scheduled for Intake, which is when an investigator is available to meet with members of the public.

On February 28, 2013, Mayfield's immediate supervisor, Wendy Martin, approved Mayfield's request to work from home. On April 3, 2014, Mayfield formally requested a reasonable accommodation for her hypertension, hernia, and anxiety by asking to work from home and come in late when episodic. Mayfield was advised on April 22, 2014 that her original accommodations were being extended to May 15, 2014, at which time the accommodations would be re-evaluated. The EEOC's disability program manager, Dr. Donna Walton, also informed Mayfield that the telework accommodation could be terminated if Mayfield failed to satisfactorily perform her assigned work.

In May 2014, Mayfield was allowed to continue to arrive to work on a flexible schedule and to take leave for the hours missed rather than having to make up the time at the end of the day. In November of 2014, Dr. Walton modified Mayfield's

accommodation again by allowing her to arrive at work between 9:00 a.m. and 9:30 a.m. without using 30 minutes of leave and to switch her alternative work schedule day off without prior notice, as long as the day was switched within the pay period.

Mayfield complained about the accommodation that required her to take leave for missed hours, and a mediation was held on September 11, 2014. A second mediation was held on January 6, 2015. As a result of the mediation, Mayfield's accommodation was modified so that she could make up time at the end of the day without being charged leave. If Mayfield was unable to make up the hours at the end of the day, she was required to use her leave.

On April 10, 2015, Ms. Martin, Mayfield's supervisor, requested that Mayfield be required to make up her missed hours at the end of the day. According to Ms. Martin, Mayfield was late 2-3 days per week and taking her 5/4/9 day off even though she did not have leave available to cover the missed hours that were not made up at the end of the day. Mayfield was apparently in a "perpetual 'Advanced Leave' status". On November 3, 2015, and again on September 20, 2016, Mayfield was advised that her accommodation was still in place.

**Request for Training/Failure to Promote**

An open position for the State and Local Program manager was created when the person who held the position retired. Daniel Lim was temporarily assigned to perform the duties while the vacancy was advertised and someone was selected. Mr. Lim was selected on a temporary basis because his current assignment was ending, and he had experience processing thousands of cases during the fiscal year. Before the opening was posted, Mayfield requested to be trained for the position and was told

that only Lim was to be trained given his temporary assignment. Mayfield was informed that the selectee would be trained after the selection was made. The position was advertised on June 3, 2014, and four candidates were interviewed for the position, including Mayfield.

Mayfield's application did not identify a single case that she worked on. Her performance rating for 2012-13 year rated Mayfield at the second lowest rating, which meant that she met expectations. In her 2014 mid-year review, Mayfield's supervisor stated that Mayfield received fewer complaints from external customers than in the past and that she did not identify, investigate, or assist with any large, complex investigations. According to Ms. Martin, Mayfield's "contribution was viewed as barely acceptable." The mid-year review also noted that without significant improvement, management may consider a performance improvement plan ("PIP"). Additionally, Mayfield did not show up for Intake duty, which forced others to do her work. Her union representative noted that Mayfield knew the investigator position very well, but did not always perform the work required, and was known by others to not be very productive. Furthermore, Mayfield was placed on at least two PIPs during her employment and was allegedly engaged in numerous contentious issues in the office.

Following the interviews and a review of the applicants, Daniel Lim was selected for the position because he was the most qualified candidate. According to the EEOC, Mayfield was the least qualified candidate because she was not organized, not detail oriented, had little experience with large, complex cases, and had been counseled on her interactions with the public based on her unprofessional behavior. Mayfield's union representative agreed that Mr. Lim was the better choice for the position.

5

**Knife Incident**

On October 23, 2015, Mayfield taped a retirement notice to Ms. Martin's door that reflected a retirement date of October 22, 2015. The day the note was received, Ms. Martin went to Mayfield's office to reassign cases and found a knife sticking up in a basket in the middle of the desk. She reported it to building security, who suggested she report it to the Federal Protective Service. She was asked to send them a picture of the knife, which she did, and was asked to report it to the Office of the Inspector General. According to Ms. Martin, Mayfield had previously commented that she was retiring and that something big was about to happen, which caused Ms. Martin to feel threatened by the knife. Mayfield was not disciplined for the knife incident.

## **LEGAL STANDARD**

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Johnson v. Advocate Health and Hospitals Corp.,* 892 F.3d 887, 893 (7th Cir. 2018). The moving party's initial burden may be satisfied if it points out "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). "All evidence and inferences must be viewed in the light most favorable to the nonmoving party[; h]owever, the nonmoving party must set forth specific facts, more than mere conclusions and allegations, sufficient to raise a genuine issue for trial." *Balderston v. Fairbanks Morse Engine Div. of Coltec Industries,* 328 F.3d 309, 320 (7th Cir. 2003) (internal citations omitted).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[S]peculaton may not be used to manufacture a genuine issue of fact." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (*citing Amadio v. Ford Motor Co.,* 238 F.3d 919, 927 (7th Cir. 2001)). In order to defeat a motion for summary judgment, the nonmoving party must make a "showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Johnson,* 892 F.3d at 893-94 (*quoting Celotex Corp.,* 477 U.S. at 322).

## **DISCUSSION**

Defendant filed this present motion for summary judgment asserting that there is no evidence from which a jury could return a verdict in Mayfield's favor. More specifically, defendant argues that the failure to accommodate claim should be dismissed because the EEOC granted her requests. Further, it is defendant's position that Mayfield was not promoted for non-discriminatory reasons. Defendant also maintains that Mayfield's remaining claims fail because she did not exhaust her administrative remedies, the events as described did not occur, or the claims were not adverse employment actions.

In response, Mayfield asserts that there is a genuine and material dispute as to the facts as put forth by defendant. She articulates numerous facts that she views as supportive of her argument. Defendant replies to Mayfield's response by asserting that Mayfield failed to abide by Local Rule 56.1 and did not properly respond to defendant's statement of facts or put forth her own statement of facts. Moreover, defendant

7

explains that Mayfield barely responded to defendant's specific arguments and did not address the elements necessary to support her claims.

As noted above, this Court agrees that Mayfield failed to properly follow Local Rule 56.1. *See supra* FN 1. Therefore, the Court cannot consider the facts relied upon by Mayfield in her brief that are not properly supported by evidence. In addition to failing to comply with Local Rule 56.1, Mayfield also failed to seek leave of court to file her response to the motion in excess of 15 pages. Further, Mayfield did not directly address the elements required to support her cause of action in response to defendant's motion. The Court turns to Mayfield's individual claims below.

**Count I: Discrimination**

Mayfield alleges discrimination on the basis of race, sex, age, national origin, and disability. She asserts that there was a racially hostile work environment at the EEOC office in Chicago and that she was denied training and promotional opportunities relative to Caucasian and Hispanic counterparts. More specifically, Mayfield argues that she was denied training for the Acting State and Local Program manager position in favor of "a younger, less experienced, less qualified, non-African American male." (Second Amended Complaint at ¶ 14). It is defendant's position that Mayfield was not promoted for non-discriminatory reasons and that she cannot establish that she was more qualified than Daniel Lim, who was hired for the position.

Title VII forbids employers from discriminating against its employees based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). Summary judgment for the employer is appropriate if the employee fails to establish any of the elements of a *prima facie* case for failure to promote. *Riley v. Elkhart Cmty. Sch.*, 829

F.3d 886, 892 (7th Cir. 2016) (citation omitted). In order to establish a failure to promote, Mayfield must produce evidence that: (1) she was a member of a protected class; (2) she was qualified for the position sought; (3) she was rejected for the position; and (4) the employer promoted someone outside of the protected class who was not better qualified for the position. *Riley*, 829 F.3d at 892 (*citing Jaburek*, 813 F.3d at 631 (internal citation omitted)). If the plaintiff establishes these elements, the burden shifts to the defendant to demonstrate that there was a nondiscriminatory reason for this action. *Scruggs v. Garst Seed Co.,* 587 F.3d 832, 838 (7th Cir. 2009) (*citing Stephens v. Erickson,* 569 F.3d 779, 787 (7th Cir. 2009)); *Fischer v. Avanade, Inc.,* 519 F.3d 393, 408 (7th Cir. 2008). If the defendant succeeds in demonstrating this, the plaintiff must then show that there is a genuine issue of material fact as to whether the defendant's proffered reason was pretextual. *Scruggs*, 587 F.3d at 838 (*citing Argyropoulos v. City of Alton,* 539 F.3d 724, 736 (7th Cir. 2008) (internal citations omitted)).

Here, Mayfield's complaint focuses on the fourth element, namely that the individual who was promoted instead of her was less qualified for the position. Defendant has provided non-discriminatory reasons for its actions, specifically that Mr. Lim "was far more qualified than Mayfield, as he was organized, detail oriented, thorough, and better able to handle the large number of state and local cases that the EEOC was obligated to monitor." (Mot. at 10.) Defendant's arguments are supported by its uncontested Statement of Facts ("SOF"), which this Court takes as true for purposes of this motion. *Bordelon,* 233 F.3d at 529. However, while defendant claims that Mayfield's union representative agreed that Mr. Lim was better suited for the job, it conveniently glosses over the fact that when asked who she would hire, the union

representative first stated that she would not have hired either of them. (Mot. at Ex. 14, p. 77 at 17-23). Upon further questioning, she explained that if given the choice between the two candidates, she would have selected Mr. Lim. (*Id.*, p. 78 at 4-9).

Nonetheless, defendant has provided evidence in support of its contention that Mayfield was not as qualified for the position. Based on the record before the Court, Mr. Lim had handled large, complex cases that required keeping track of significant amounts of data, something required by the position and not in Mayfield's background or presented on her application. (SOF at ¶¶ 26-28, 31, 38-39). Further, Mayfield's annual reviews documented issues with Mayfield's performance, attendance, and attitude. (*Id.* at ¶¶ 32-37). Mr. Lim's annual reviews demonstrated a more meticulous and knowledgeable employee. (*Id.* at ¶ 40).

Mayfield has provided no evidence to support the elements of her failure to promote claim, nor does she even acknowledge the elements in her response to defendant's motion for summary judgment. Instead, Mayfield broadly argues that Mr. Lim was not more qualified than her for the position. Again, however, she fails to properly cite to her arguments or introduce evidence such that the Court can consider it as fact. *See Cichon,* 2003 WL 22169761, at *3 (*citing Rogers*, 320 F.3d at 751; *Albiero,* 246 F.3d at 933).

Therefore, given the record before the Court, there is no genuine issue of material fact regarding defendant's explanation for promoting Daniel Lim instead of her. Because there is no set of circumstances in which Mayfield can establish the elements of her failure to promote claim, specifically the fourth element at issue here, this Court grants defendant's motion of summary judgment on this count.

**Count II: Failure to Accommodate**

In order to establish a failure to accommodate claim under the Americans with Disabilities Act ("ADA"), Mayfield must show that: (1) she is a "qualified individual with a disability"; (2) the EEOC was aware of her disability; and (3) the EEOC failed to reasonably accommodate her disability. *Gratzl v. Office of Chief Judges of 12th, 18th, 19th, & 22nd Judicial Circuits*, 601 F.3d 674, 678 (7th Cir. 2010) (*citing EEOC v. Sears, Roebuck & Co.,* 417 F.3d 789, 797 (7th Cir. 2005)). Mayfield asserts that she was denied reasonable accommodations for her disability when she requested, but was denied, a flexible work arrangement. According to defendant, and supported by its Statement of Facts, Mayfield was, in fact, granted a flexible work arrangement upon her request. Mayfield briefly addresses defendant's position in her response by arguing that the requirement that she had to use advanced leave put her in the negative at the time of retirement and that although she was told she would be assigned an assistant or receive a tape recorder, neither were provided.[2]

"Under the ADA, an employer must make 'reasonable accommodations' to a disabled employee's limitations, unless the employer can demonstrate that to do so would impose an 'undue hardship.' " *Sears, Roebuck & Co.*, 417 F.3d at 802 (*citing* 42 U.S.C. § 12112(b)(5)(A)). "In order to accommodate a disabled employee, an employer must 'consider making changes in its ordinary work rules, facilities, terms, and conditions in order to enable a disabled individual to work.' " *Kummer v. Illinois Cent. R.R. Co.*, No. 13-CV-5313, 2016 WL 3917367, at *3 (N.D. Ill. July 20, 2016) (*quoting*

---

[2] It is only in plaintiff's response that the issue of a tape recorder is first addressed. Mayfield does not properly cite to any facts to support this argument; therefore, we do not consider it in rendering this decision.

*Vande Zande v. State of Wis. Dep't of Admin.*, 44 F.3d 538, 542 (7th Cir. 1995)). It is not always required that an employee be provided with her preferred accommodation, but "whether an accommodation is reasonable depends, to a significant extent, upon determining whether the employer has acceded to the disabled employee's request." *Kummer*, 2016 WL 3917367, at *3 (*quoting Rehling v. City of Chicago*, 207 F.3d 1009, 1014 (7th Cir. 2000)).

An employer does not need to create a new job or strip a current job of its principal duties in order to accommodate a disabled employee.[3] *Gratzl,* 601 F.3d at 680 (*citing Ammons v. Aramark Uniform Servs., Inc.,* 368 F.3d 809, 819 (7th Cir. 2004)). Instead, an employer is to "make whatever accommodations are reasonably possible in the circumstances to perform the functions essential to [her] position." *Hoffman v. Caterpillar, Inc.,* 256 F.3d 568, 577 (7th Cir. 2001) (*quoting Miranda v. Wis. Power & Light Co.,* 91 F.3d 1011, 1017 (7th Cir.1996)). At the very least, the employer is obliged to provide an accommodation that effectively accommodates the disabled employee's limitations. *See U.S. Airways, Inc. v. Barnett,* 535 U.S. 391, 400 (2002); *Sears, Roebuck & Co.*, 417 F.3d at 802. The "ADA requires that employer and employee engage in an interactive process to determine a reasonable accommodation." *Baert v. Euclid Beverage, Ltd.,* 149 F.3d 626, 633 (7th Cir. 1998). If a disabled employee shows that her disability was not reasonably accommodated, the employer will be liable only if it bears responsibility for the breakdown of the interactive process. *Sears, Roebuck &*

---

[3] The ADA, however, does require employers to appoint disabled employees to vacant positions for which they are qualified if it is reasonable and would not present an undue hardship to the employer. *E.E.O.C. v. United Airlines, Inc.,* 693 F.3d 760, 761 (7th Cir. 2012). Neither party raised the possibility of a different position for Mayfield based on her disability; therefore, the Court need not address that possibility in further detail here.

12

*Co.*, 417 F.3d at 797 (*citing Beck v. Univ. of Wisc. Bd. of Regents,* 75 F.3d 1130, 1137 (7th Cir. 1996)).

Here, defendant maintains that Mayfield was never "denied" an accommodation and that any claims regarding her modification should be rejected because "an employer is not obligated to provide an employee the accommodation [s]he requests or prefers, the employer need only provide some reasonable accommodation." (Mot. at 9 *citing Mobley v. Allstate Ins. Co.,* 531 F.3d 539, 546 (7th Cir. 2008)). Mayfield was always permitted to work a flexible schedule that allowed her to arrive at work anywhere between 9:00 a.m. and 11:00 a.m. Her accommodation was reviewed and reassessed over the years, but it was never denied. At one point, Mayfield was required to take leave rather than make up for missed time if she was unable to make up the missed time the same day she came in late. According to defendant's uncontested Statement of Facts, Mayfield was routinely late 2-3 days per week and took her 5/4/9 day off even though she did not have leave time available to cover the missed hours. Due to concerns over Mayfield's ability to make up time during the pay period and over time keeping concerns, Mayfield was required to make up hours at the end of each day as opposed to within the pay period. Because the EEOC allowed Mayfield to work a flexible schedule that complied with its attendance requirements, defendant asserts that summary judgment is proper on this claim.

Mayfield's complaint centers on the requirement to make up time when she was late, or else have the time taken out of her leave days. The record before the Court reflects that Mayfield was accommodated through the ability to come in late when necessary for health reasons and, at a later date, to telecommute on certain days.

There is no indication, nor does Mayfield argue, that an individual with a late allowance should not have to make up the time missed in the workday. Instead, it stands to reason that allowing an employee to routinely miss up to two hours of work a day without imposing a requirement to make it up would cause an undue hardship on the employer. Defendant contends that the reason for eventually requiring that the hours should be made up at the end of the same day instead of within the pay period was due to time keeping concerns and the likely inability of Mayfield to be able to make up all of the missed time within the pay period.

Given the uncontested fact that Mayfield routinely came in late 2-3 days a week and took off a 5/4/9 day without having leave available, this Court agrees that it was reasonable to require some structure to her ability to come in late. With respect to the purported "time keeping" concerns, we find that there is insufficient evidence to conclude that difficulties in monitoring an employee's arrival and departures times constitutes an undue hardship. Nonetheless, we do agree that an employee regularly missing hours of work a week imposes an undue hardship and is not a necessary reasonable accommodation. Moreover, Mayfield does not address in specific detail what medical needs required her to come in late as needed or why those medical issues would not allow for her to work a full day once she arrived at the office. Therefore, we find that there is insufficient evidence such that a reasonable jury would conclude that defendant failed to reasonably accommodate plaintiff, and we grant defendant's motion for summary judgment on Count II.

**Count III: Retaliation**

Mayfield further alleges that she was retaliated against and harassed by defendant due to her actions. More specifically, she alleges that her accommodations were removed without a reasonable explanation. Further, she states that false allegations of her "threatening behavior were also brought with Homeland Security and building security by Defendant on a day when it was apparently forgotten that Plaintiff Mayfield was allowed to work from home." (Second Amended Complaint at ¶ 43).

The Seventh Circuit has held that in employment discrimination cases, "the district courts must stop separating 'direct' from 'indirect' evidence and proceeding as if they were subject to different legal standards." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). Instead, the test "is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse action." *Id.*

To be actionable, "the adverse action must materially affect the terms and conditions of employment[,]" and there must be "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Stutler v. Illinois Dep't of Corr.*, 263 F.3d 698, 703 (7th Cir. 2001) (internal quotations omitted). "A materially adverse employment action is something 'more disruptive than a mere inconvenience or an alteration of job responsibilities.' " *Nichols v. Southern Illinois University-Edwardsville*, 510 F.3d, 772, 780 (7th Cir. 2007) (internal quotation omitted). Further, in order to prove retaliation, a plaintiff must "show that there is a causal link between the protected activity and the adverse action," *i.e.*, "produce evidence that a

15

'retaliatory animus' motivated the defendant['s] adverse actions against [plaintiff]." *Brown v. Adv. South Suburban Hosp.,* 700 F.3d 1101, 1106 (7th Cir. 2012).

Although Mayfield only articulates certain allegations in the retaliation count, she also asserts the following: a supervisor pointed her finger in her face, threatened to place her on a performance improvement plan, gave her a subpar mid-year review, contacted security over the knife incident, denied training, and instructed her to close certain files. (Second Amended Complaint at ¶¶ 6-7, 9, 12, 15, 18). It is defendant's position that Mayfield's claims are unfounded and unsupported by the evidence. Given the variety of claims, we turn to each allegation individually.

With respect to the finger-pointing accusation, no evidence of the action has been provided such that the Court need to even address whether the alleged behavior constitutes an adverse action. Next, although Mayfield cites to poor reviews and the threat of a performance plan, she does not allege or provide evidence as to how these instances constitute adverse actions. There is no indication that the review or threat of a PIP were followed by a demotion or reassignment of responsibilities. *See Krause v. City of LaCrosse*, 246 F.3d 995, 999 (7th Cir. 2001) (finding that negative performance evaluations do not constitute adverse actions unless accompanied by job loss, demotion, or some other action). Further, as established in defendant's Statement of Facts, Mayfield was not simply denied training for the State and Local Program Manager position. In reality, Mayfield requested that she be trained for the position before the vacancy was announced. She was told that only the individual temporarily covering the position and the person hired were to be trained. (SOF at ¶ 23). There is no evidence to support her contention that the decision to limit training to the person

actually selected for the position was discriminatory or retaliatory. Lastly, Mayfield, again, fails to argue or establish how an instruction to close certain files constitutes an adverse action.

Mayfield's claim that she was forced to retire, while not articulated as such, appears to be a constructive discharge claim. In defendant's Statement of Facts, it asserts that "Mayfield did not raise her claim that she was forced to retire with an EEO counselor within 45 days of the alleged action, nor did she raise her forced retirement claim in a formal EEO complaint." (SOF at ¶ 51). Mayfield claims in her response that she filed an "OEO[sic] complaint regarding the hostile work environment due to harassment and she was told that it had been completed before she retired[.]" (Resp. at 10). However, Mayfield fails to produce any evidence to support her claims and refute defendant's Statement of Facts. Further, Mayfield states that she went through the administrative process to address her grievances by utilizing Resolve and her union (Resp. at 14); however, she again fails to provide evidence to support these arguments or address how they meet the administrative requirements. Therefore, the Court finds that Mayfield did not properly exhaust her administrative remedies for this claim. *See Doe v. Oberweis Dairy*, 456 F.3d 704, 712 (7th Cir. 2006); *Hill v. Potter,* 352 F.3d 1142, 1145–46 (7th Cir. 2003); *Cheek v. Western & Southern Life Ins. Co.,* 31 F.3d 497, 500 (7th Cir. 1994). Even if Mayfield did exhaust her administrative remedies for this claim, there is no evidence to support a causal connection between her statutorily protected behavior and the decision to retire. Mayfield provides no evidence as to how or why she was forced to retire except to allege that she was "pressured to retire". (Second Amended Complaint at ¶ 3).

Mayfield further claims that she was harassed when defendant contacted building security and the Department of Homeland Security after finding a knife in her office. In its motion, defendant argues that the knife was threatening to Mayfield's supervisor because of its positioning and Mayfield's previous statement to co-workers that she was retiring and that "something big" was going to happen. (SOF at ¶¶ 46, 48). According to defendant, Mayfield was not punished for the incident.

Defendant argues that Mayfield must provide evidence that the knife was pretext for discrimination when Mayfield was asked to report to the office to explain the knife. It is defendant's position that Mayfield cannot establish that the proffered reasons for its actions were a lie. *See Van Antwerp v. City of Peoria*, 627 F.3d 295, 298 (7th Cir. 2010) (The plaintiff must prove that the proffered reasons for actions were "a lie-not just an error, oddity, or oversight."); *Holmberg v. Baxter Healthcare Corp.,* 901 F.2d 1387, 1391 (7th Cir. 1990) ("Where [the plaintiff] has not met her burden of showing that [her employer's] explanations are merely a pretext for discrimination, it is not necessary to decide whether she also established a prima facie case.") Mayfield must provide some evidence of an inference that the real reason for the actions discussed above was her race, gender, age, or disability. *See Brown v. Ill. Dep't of Natural Resources,* 499 F.3d 675, 683 (7th Cir. 2007) (citations omitted).

Here, no such evidence has been provided. Mayfield merely asserts that she was given permission to use the knife for catering events and that she was out of the office the day the knife was discovered and could not have been considered a threat. Again, she fails to produce any evidence to support these assertions or form a causal connection as to how these facts created a materially adverse action since she was

never disciplined. Accordingly, there is no indication that defendant's behavior in responding to the knife was based on Mayfield's race, gender, age, or disability.

Lastly, although Mayfield claims that individuals were advised not to speak to her and that one co-worker feared retaliation if she said any accolades to Mayfield, no evidence was produced to support these allegations. Based on the record before the Court, we find that the claims as alleged by Mayfield are unsupported by the evidence; and no reasonable jury would determine that Mayfield's race, gender, age, or disability, caused any adverse action. Therefore, summary judgment with respect to these claims is granted in favor of defendant.

## **CONCLUSION**

Based on the foregoing analysis, we grant defendant's motion for summary judgment with respect to Mayfield's claims.

**Date: October 5, 2018**

_____

**Michael T. Mason
United States Magistrate Judge**